USA v. John Brennick                    CR-03-006-B    07/31/03

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**United States of America**</u>

    **v.**                                    Crim. No. 03-006-B
_____Opinion No. 2003 DNH 138
<u>**John Brennick**</u>


## O R D E R

On January 8, 2003, a grand jury returned a two count indictment charging defendant John Brennick with interference with commerce through robbery (Count I), 18 U.S.C. § 1951 (2000 & Supp. 2003), and with transportation of a stolen motor vehicle (Count II), 18 U.S.C. § 2312 (2000 & Supp. 2003).  On July 9, 2003, a grand jury issued a superseding indictment, charging Brennick, in addition to the above described Counts I and II, with a third count.  Count III, a second count of interference with commerce through robbery, 18 U.S.C. § 1951, is not at issue in this order.

Pending before me is Brennick's motion to suppress multiple identifications.  (Doc. No. 9).  Brennick argues that I should suppress all in-court and out-of-court identifications pertaining to the armed robbery of a Wal-Mart because the photo array from

which witnesses identified Brennick was impermissibly suggestive. Because I do not find the photo array impermissibly suggestive, I deny Brennick's motion to suppress.

## I.

On December 29, 2002, at approximately 1:44 a.m., Concord Police Department responded to a report of armed robbery at a Wal-Mart located on Loudon Road in Concord, New Hampshire.[1] When police officers arrived, the robbery had already been completed and the suspect had fled the store. Witnesses informed the police officers that the suspect, later identified as Brennick, drove a dark colored Oldsmobile, entered the Wal-Mart, and asked for change at various registers before purchasing a pack of gum and robbing a cashier, Mark Parker.

Parker was working at a cash register when Brennick approached him. Brennick asked Parker for change and Parker responded that he could not open the cash register to make change. Brennick then picked up a pack of gum and asked if he could purchase it and then receive change. Parker responded affirmatively and directed Brennick to a different register where

---

[1] As an evidentiary hearing on this motion was not held, the recitation of facts is largely derived from the police report.

-2-

Parker handled the transaction.

When Parker handed Brennick his change from the transaction, Brennick grabbed Parker's arm and pulled him from behind the register. Brennick then removed all of the money from the register. When Parker began to get up and yell for help, Brennick turned toward Parker, removed a large kitchen knife from his pocket and pointed it at Parker. Brennick fled the store with over $400 in cash.

Detectives Todd Flanagan and John Thomas of the Concord Police Department interviewed Parker. Parker described Brennick as a white male, approximately five feet eight inches, weighing approximately 140-150 pounds, with gray hair and three distinct scratches on the right side of his face. Parker stated Brennick did not wear a disguise.

Detective Flanagan also interviewed Carrie Bresse, a Wal-Mart employee working as a cashier during the time Brennick was present in the store. Brennick approached Bresse in her checkout line with a handful of change and asked Bresse if he could get dollar bills for the change. Bresse informed Brennick that she could only open her register for a purchase. Bresse described the man as 35 to 40 years old with a "scruffy face." She further

stated he wore a red jacket and had three distinct scratches on the right side of his face that appeared to be fingernail scratches. Bresse told the detectives that she could pick him out of a lineup.

At approximately 2:00 a.m., New Hampshire State Trooper Mark Beaudoin, on patrol in the area surrounding Bedford, New Hampshire, attempted to pull over a gray Oldsmobile sedan that he suspected might be connected to the Wal-Mart robbery. The driver, however, failed to pull the car over to the side of the road and Trooper Beaudoin pursued the Oldsmobile in what became a high-speed chase. The driver, later identified as John Brennick, ultimately crashed the vehicle and was arrested on a number of motor vehicle related offenses. Members of the New Hampshire State Police informed the Concord Police Department that Brennick had three distinct scratches on the right side of his face.

Detective Flanagan and Detective Thomas went to the Hillsborough Country Jail, where Brennick was being held. The items inventoried from Brennick included a red jacket, $499 in cash and his wallet. Inside Brennick's wallet was his New Hampshire non-drivers identification card. Detective Flanagan took a digital image of the non-driver identification card. In

-4-

addition, Flanagan took a number of photos of him using a digital camera. Because of the three scratches on the right side of Brennick's face, Flanagan was concerned that if any of the photos were used in a photo array, they may be too suggestive. Flanagan then attempted to take another photo of Brennick that did not show the scratches on his face, but Brennick refused. Flanagan then constructed a photo lineup using Brennick's image from the New Hampshire non-drivers identification card, along with seven other photographs. Flanagan placed Brennick's photograph in the number two position, the second photo from the top left corner of the photo array.

Parker was shown the photo array and he pointed to the photograph of Brennick stating that he was the person who robbed him at the Wal-Mart. In responding to Flanagan's question of how he would rate his identification on a scale of one to ten, he rated it a 9.5. Bresse was also shown the lineup and positively identified Brennick as the individual who came to her register for change. Lastly, the photo array was shown to Carol Marcotte, another Wal-Mart employee present at the time. She also identified Brennick as the individual who robbed the Wal-Mart.

## II.

Brennick argues that the identifications from the photo array should be suppressed because the photo array was impermissibly suggestive.  Specifically, Brennick argues that the placement of his photo, in the number two position second in from the top left corner, justifies suppression of the identifications.  He contends that this position is where "the eye of any reader of English is drawn."  In addition, he claims the individual in position number one, in the top left corner, has a "dark complexion" that does not match that of Brennick.  He further argues that the array was impermissibly suggestive because: he is the only person wearing a turtleneck with a zipper; the background of the photo is "different" from the other photographs; his hairstyle is different and his forehead is more prominent than the foreheads of the individuals depicted in the other photographs.

In determining whether a particular identification should be suppressed, I apply the two-pronged test established in <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972).  First, I determine if the identification process was "impermissibly suggestive."  <u>Id.</u>; <u>see</u> <u>United States v. Maguire</u>, 918 F.2d 254, 263 (1st Cir. 1990) *cert.*

*denied* 499 U.S. 950 (1991) (applying the two-pronged test to photo array). Second, I must determine whether, under the "'totality of the circumstances,' the identification was reliable even though the confrontation procedure was suggestive." Id. In Biggers, the Supreme Court delineated five factors to be considered in analyzing the totality of the circumstances in the second prong:

> the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation.

Id. If I find that the photo array was not impermissibly suggestive, I need not proceed to analyze whether the photo array was reliable under the totality of the circumstances. See Maguire, 918 F.2d at 263.

I find that the photo array was not impermissibly suggestive and therefore should not be suppressed. First, the fact that English readers read from left to right and top to bottom does not convince me that the identifications by three Wal-Mart employees should be suppressed. In addition, the photograph in the number one position does not generate such a remarkable

contrast with Brennick as to warrant discussion of Brennick's argument that the witnesses' eyes would skip right over him. Second, none of the witnesses described Brennick as wearing a zipper turtleneck and therefore it is irrelevant that he is the only one in the photo array wearing one. Third, the background of Brennick's photograph does not vary substantially from other photographs in the array. In fact, the background is identical to the two photographs to the right of Brennick. Lastly, I disagree that Brennick's hair style and forehead are so distinctive and different from the others in the array as render the array suggestive.

Because I find the photo array was not impermissibly suggestive, I decline to analyze the reliability of the identifications under the totality of the circumstances. Furthermore, I deny Brennick's request to have an evidentiary hearing to aid me in assessing the totality of the circumstances under which the witnesses were shown the photo array. See United States v. Isom, 85 F.3d 831, 838 (1st Cir. 1996) (A criminal defendant is not entitled as of right to an evidentiary hearing and must demonstrate a need for special treatment).

## CONCLUSION

For the forgoing reasons, I deny the defendant's motion to suppress identifications. (Doc. No. 9).  In addition, I deny the defendant's motion in limine, without prejudice, as moot in light of the July 9, 2003 superseding indictment.  (Doc No. 10).


SO ORDERED.


_____
Paul Barbadoro
Chief Judge


July 31, 2003

cc:  Bjorn Lange, Esq.
     Terry Ollila, Esq.